UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN CASON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-564** |
| **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** | **SECTION "I"** |

## ORDER AND REASONS

Before the Court is defendant State Farm Fire and Casualty Insurance Company's ("State Farm") motion[1] *in limine* to exclude the report estimate and testimony of plaintiffs' proffered expert, Don Kotter ("Kotter"). Plaintiffs, John and Denise Cason ("plaintiffs"), oppose[2] State Farm's motion. For the following reasons, State Farm's motion is **DEFERRED** until trial.

### *BACKGROUND*

Plaintiffs suffered damage to their home located at 1513 Lancaster Dr., Marrero, Louisiana 70072, as a result of Hurricane Katrina ("Katrina"), which made landfall on August 29, 2005.[3] At the time of their loss, plaintiffs' home was insured pursuant to an "all risk" policy issued by State Farm.[4] The policy provided coverage for damage resulting from wind and wind-driven rain.[5] Plaintiffs allege that, though the policy obligated State Farm to pay plaintiffs for damage to their home, other structures, contents, debris removal and "loss of use/[Additional

---

[1] R. Doc. No. 47.
[2] R. Doc. No. 50.
[3] R. Doc. No. 1, ¶¶ I, V.
[4] R. Doc. No. 1, ¶ IV.
[5] R. Doc. No. 1, ¶ VI.

1

Living Expenses]," State Farm only tendered "partial payment."[6]  Plaintiffs subsequently filed this lawsuit seeking damages for State Farm's failure to pay for all damages plaintiffs suffered, breach of contract, failure to tender timely and sufficient payment pursuant to La. Rev. Stat. §§ 22:658 and 22:1220 and breach of duty pursuant to La. Rev. Stat. §§ 22:658 and 22:1220.[7]

Following Katrina, plaintiffs completed repairs to their damaged property within six months of the storm.[8]  In early August 2011, nearly six years after the storm, plaintiffs hired Kotter, a licensed independent adjuster, to review State Farm's file regarding plaintiffs' claims and prepare a report estimating the amount they were allegedly due pursuant to their policy.[9]  Kotter estimated that plaintiffs sustained wind-related damage of $60,828.77, compared to State Farm's estimate that they only suffered $17,400.22 in wind-related damage.[10]

State Farm seeks to exclude Kotter's report and testimony on three grounds: (1) Kotter completed his inspection and report five years after plaintiffs finished their repairs, plaintiffs have documentation of the actual repair costs they incurred, and Kotter did not consider the actual repair costs in drafting his estimate; (2) Kotter's repair estimate is unreliable, and (3) Kotter is not qualified to render any opinion regarding whether plaintiffs' damage was caused by wind because he is not an engineer, meteorologist or a licensed public adjuster.[11]

First, plaintiffs respond that the crux of their lawsuit hinges on State Farm's deliberate underpayment to them relative to their actual losses.  Plaintiffs contend that State Farm

---

[6] R. Doc. No. 1, ¶ VI.  Plaintiffs allege that their homeowner's policy provided for $113,085 in coverage for the dwelling, $11,309 in coverage for other structures, $84,814 in coverage for contents and allowed for twelve months of additional living expenses.   R. Doc. No. 50, p. 4.
[7] R. Doc. No. 1, ¶ VII.
[8] R. Doc. No. 47-1, p. 4.
[9] R. Doc. No. 50, p. 6.
[10] R. Doc. No. 50, p. 6.
[11] R. Doc. No. 47-1, p. 2.  State Farm states that Kotter "apparently did not take the actual repair costs to account in drafting his estimate . . . ."  *Id.*  Plaintiffs maintain that Kotter did "review[]" their repair receipts.  R. Doc. No. 50, p. 6.

2

"underscoped" their claim in that it "did not sufficiently identify and pay for all damages associated with the wind and wind-driven rains of Hurricane Katrina."[12] Plaintiffs also claim that State Farm "underpriced" their claim in that it "paid too little for the items it included in its estimate."[13] Plaintiffs assert that because they were not fully reimbursed for their losses, they could not hire licensed contractors to return their home to its original pre-storm condition. Consequently, the "actual amount" they spent on these "substandard" repairs does not adequately measure their damage.[14] Second, plaintiffs argue that Kotter's estimate is reliable because he interviewed them, inspected their home, reviewed State Farm's claims file, including all photographs of the damage, and then used the same pricing software that State Farm utilizes in order to generate his estimate.[15] Finally, plaintiffs argue that State Farm's adjuster, who determined whether plaintiffs' damage was caused by wind, was also not an engineer, meteorologist or hydrologist.[16] Furthermore, plaintiffs assert that "there is no dispute that Hurricane Katrina caused wind and wind-driven rain damage" to their property.[17]

## *LAW AND DISCUSSION*

### I.   Standard of Law

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; see *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

---

[12] R. Doc. No. 50, p. 2.
[13] R. Doc. No. 50, p. 2.
[14] R. Doc. No. 50, pp. 2-3.
[15] R. Doc. No. 50, p. 3.
[16] R. Doc. No. 50, p. 3.
[17] R. Doc. No. 50, p. 10.

>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing *Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)). "Both the determination of reliability itself and the factors taken into

account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in Scordill v. Louisville Ladder Group, L.L.C., 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. See *Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' " *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). " 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without

enlightenment from those having a specialized understanding of the subject involved in the dispute.' " *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

**II.     Analysis**

State Farm argues that Kotter's testimony and report should be excluded because, in formulating his estimate, he allegedly used an unreliable methodology. Several courts, including this one, have excluded expert testimony which was in some respects similar to what plaintiffs offer in this case. *See, e.g., Lombardo v. State Farm Fire and Cas. Ins. Co.*, 2010 WL 2399350 (E.D. La. June 8, 2010) (Barbier, J.) ("[I]t is unlikely that a reliable estimate can be formed by observing property long after the property has been repaired."). In *Tardo*, 2009 WL 1804766, at *2-4, this Court excluded an expert's testimony when the expert visited the property three years after Katrina and based his opinion on an interview with the owner. Because the expert did not review photographs taken of the damaged property before it was repaired, this Court "[was] not persuaded that [the expert's] interview with [plaintiff property owner], by itself, [was] a reliable method for estimating the damage that plaintiffs' property sustained nearly three years earlier." *Id*. at *3. Similarly, in *Lightell*, 2009 WL 5217087, the court excluded an expert's testimony where he reviewed but "was unable to use the photographs contained in the file to compute his estimate because he could not understand the photographs . . . [and] essentially based his estimate off the interview with Plaintiffs and a cursory inspection of the property after the property was repaired and sold (an inspection in which he did not view the interior or record any notes)." *Id*. at *3.

In this case, plaintiffs maintain that Kotter's estimate is reliable because he not only interviewed them and inspected their home, but because he also reviewed the State Farm claims

6

file that included photographs and used the same pricing software ("Xactimate")[18] to generate his estimate that State Farm utilized when preparing its own estimate.[19] Because Kotter did more than merely interview plaintiffs and reviewed the entire State Farm claims file, which included photographs, this Court finds his methodology distinguishable from what was presented to this Court in *Tardo*. Unlike *Tardo*, the Court does not believe that there is "too great of an 'analytical gap between the data and the opinion proffered.' " *Tardo*, 2009 WL 1804766, at *4 (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 277 (5th Cir. 1998)). Consequently, the Court will not exclude Kotter's testimony on this basis.

State Farm also cites several cases from this district where the court excluded expert testimony because the purported experts inspected the relevant properties well after they had been repaired and such experts did not consider repair costs actually incurred in restoring the properties.[20] These cases, State Farm contends, "are consistent with the longstanding principle in Louisiana that if property has been repaired," then one looks to the repair bill to determine the amount of damage incurred.[21]

The Court notes that the case State Farm provides enunciating this "longstanding principle," *Gambrell v. Audubon Ins. Co.*, 115 So.2d 727 (La. Ct. App. 1959), states that "the proper basis for assessing damages is the repair bill" when the damaged property "has been restored to its *original condition*." *Id*. at 730 (emphasis added). Plaintiffs here argue that they

---

[18] Plaintiffs point out that State Farm has "its own version of Xactimate with its own prices not reflected in the version of Xactimate accessible by the general public." R. Doc. No. 50, p. 3.
[19] R. Doc. No. 50, pp. 3 and 6. Again, plaintiffs also state that Kotter "reviewed" their repair receipts. *Id.* at 6.
[20] *Trujillo v. State Farm Fire and Cas. Ins. Co.*, 2011 WL 162883 (E.D. La. Jan. 19, 2011) (McNamara, J.); *Lombardo v. State Farm Fire and Cas. Ins. Co.*, 2010 WL 2399350 (E. D. La. June 8, 2010) (Barbier, J.); *Lightell v. State Farm Fire and Cas. Co.*, 2009 WL 5217087 (E.D. La. Dec. 31, 2009) (Barbier, J.); *Tardo v. State Farm Fire and Cas. Co.*, 2009 WL 1804766 (E.D. La. June 22, 2009) (Africk, J.); *Matthews v. State Farm Fire and Cas. Co.*, 2007 WL 2127581 (July 24, 2007) (Africk, J.).
[21] R. Doc. No. 47-1, p. 6.

were unable to restore their property to its "pre-storm condition" because State Farm would not pay them the full value of their claim and, consequently, their invoices merely reflect the costs of "substandard" repairs.[22] A review of the cases[23] State Farm cites shows that none of the plaintiffs therein argued that their actual repair bills reflected substandard work that failed to return their properties to their original condition.

However, State Farm also asserts that Kotter failed to address the sufficiency of the actual repairs that the plaintiffs completed. The Court finds this argument more persuasive. In order for Kotter's testimony to be relevant, there must be testimony evidencing why the completed repairs did not return the property to its original pre-storm condition, *i.e.*, the sufficiency or insufficiency of the actual repairs. As the defendant states, Kotter does not "discuss the difference between State Farm's estimate and the actual repairs performed or repair costs incurred by the Plaintiffs."[24] Nor does Kotter address any items that were "upgraded" as a result of the repairs.[25]

Consequently, many questions remain with respect to the reliability of Kotter's estimate. For example, the Court does not have copies of the repair receipts and it is unaware of the contents of such receipts. The Court does not know what repairs were completed and the extent to which these repairs returned or failed to return the property to its original pre-storm condition. Accordingly, as plaintiffs are seeking to have Kotter's testimony admitted, they must, in order to establish that Kotter's testimony is reliable demonstrate that Kotter considered the sufficiency of the actual repairs when formulating his estimate.

---

[22] R. Doc. No. 50, pp. 3 and 6.
[23] See n.20.
[24] R. Doc. No. 53, p. 2.
[25] R. Doc. No. 53, p. 2.

Finally, plaintiffs' home sustained both flood and wind damage. Kotter's estimate solely addresses wind-related damage and State Farm argues that Kotter is not sufficiently qualified to make a determination of causation.[26] The Court notes that State Farm, itself, identified certain damage as "wind damage."[27] To the extent that Kotter generated his own estimate of damage that State Farm already identified as wind-related, State Farm's argument is unpersuasive. Kotter may testify about what caused that damage and the cost that will be incurred to repair it to its original pre-storm condition, provided that he can satisfy the Court's concerns regarding the sufficiency or insufficiency of the repairs that plaintiffs performed.

Plaintiffs also contend that several other instances of damage, which State Farm did not classify as wind-related, were caused by wind. Kotter included this damage in his estimate.[28] Because plaintiffs are seeking to have Kotter's testimony admitted, they must establish that Kotter is qualified to offer expert testimony regarding the cause of the damage to their property. Plaintiffs argue that it is "undisputed" that their home suffered only three inches of water damage due to flooding and, it follows, damage above the waterline that Kotter included in his estimate must have been caused by wind.[29] This argument is not sufficient to convince the Court that Kotter is qualified to offer expert testimony with respect to the cause of such damage to their property. The Court finds that plaintiffs have not satisfactorily established that Kotter is a qualified expert who can determine what caused alleged "wind-related" damage to their property. Plaintiffs have also not convinced this Court that his opinions are based on a reliable methodology. Kotter may not testify about the causes of such damage, unless, outside the

---

[26] R. Doc. No. 47-1, p. 12.
[27] R. Doc. No. 50-1, p. 1.
[28] Such damage includes cracked bricks on the home's exterior, and damage to exterior siding, etc. R. Doc. No. 50, pp. 5-6.
[29] R. Doc. No. 50, pp. 4 and 10.

9

presence of the jury and to the Court's satisfaction, he can establish that he is a qualified expert and that his opinions are based on a reliable methodology.

Accordingly,

**IT IS ORDERED** that State Farm's motion *in limine* to exclude Kotter is **DEFERRED** until trial.

New Orleans, Louisiana, September __21st__, 2011.

                                                                                            _____
                                                                                            **LANCE M. AFRICK**
                                                                                            **UNITED STATES DISTRICT JUDGE**